**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. CR 14-790-TUC-CKJ |
| SHAWN MIGUEL, | ) ) | **ORDER** |
| Defendant. | ) ) ) | |

Pending before the Court are the Motion in Limine (Docs. 102) filed by the government and the Motions in Limine (Docs. 88 and 103) filed by Defendant Shawn Miguel ("Miguel").  Responses have been filed as to these motions (Docs. 107, 110, and 111). Counsel presented oral argument to the Court on February 9, 2015.  Additionally, Miguel has filed a Notice of Disclosure of Witness Pursuant to FRE 404(a) and (b) (Doc. 108).  During the February 11, 2015 hearing, the Court stated it would address issues of the 404(a) witness and disclosure of the agent's personnel records.

I. *Motion in Limine* (Doc. 88)

Miguel seeks to preclude evidence that passenger Amon Chavez ("Chavez") told Daniel Bonner ("Bonner"), a nurse at University Medical Center, that Miguel had said it would be fun to ram the agent.  Chavez, later that day and since then, has denied making the statement.  Miguel argues why this statement does not qualify as an exception to a number of possible hearsay exceptions.

A. *Excited Utterance*

The excited utterance exception allows a court to admit a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed.R.Evid. 803(2).  The "excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *United States v. Pursley*, 577 F.3d 1204, 1220 (2009).  Other factors, including age of declarant, characteristics of event, and subject matter of the statements may suggest a declarant is still under the stress or excitement of the event. *United States v. Rivera*, 43 F.3d 1291 (9th Cir. 1996).  There is no bright-line rule as to when a lapse of time is too great to qualify as an excited utterance.  *United States v. Green*, 556 F.3d 151, 156-57 (3rd Cir. 2009).  Courts have recognized a greater length of time before an excited utterance is permissible as compared to a present sense impression. *Torres v. City of Santa Clara*, No. 5:13–cv–01475–PSG, 2014 WL 4145509 *3 n. 20 (N.D.Cal. 2014).

In this case, startling events occurred:  driving off the road, contact between the vehicles, and the shooting of Miguel and Chavez by Border Patrol Agent Spann ("Spann"). Although the time span between these incidents and the alleged statement to Bonner has not been established, there could not have been more than seven hours and 47 minutes between the events and the alleged statement – the events occurred no earlier than 9:00 p.m. on March 30, 2014 and Special Agent Michelle L. Terwilliger spoke with the nurse at 4:47 a.m. on March 31, 2014.  *See* Doc. 88, Ex. C.  The time between the events and the statement were involved with arranging for and transporting Chavez by helicopter to the University of Arizona Medical Center.  In other words, the startling events were ongoing.  Moreover, there is a nexus between the content of the statement and the events.  The Court finds Chavez' statement was an excited utterance.

B. *Statement Made for Medical Diagnosis or Treatment*

"A statement that:  (A) is made for--and is reasonably pertinent to--medical diagnosis

or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause" is "not excluded by the rule against hearsay[.]" Fed.R.Evid. 803(4).  Rule 803(4) allows a person to whom an out-of-court assertion describing medical history, or past or present symptoms or sensations for the purpose of medical diagnosis or treatment, to testify as to the substance of the assertion.  The exception is based upon the view that "a statement made in the course of procuring medical services, when the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility...." *White v. Illinois*, 502 U.S. 346, 356 (1992).

The information was reasonably pertinent to diagnosis or treatment – Chavez could have just said he was shot, but the added details let the nurse (and other medical personnel) know that bullets may have traveled through a vehicle frame or window and the details of how the incident happened let the nurse know that the vehicle was relatively close to the shooter.  The Court finds this statement qualifies as a statement made for medical diagnosis or treatment.

C. *Reliability of Statement*

The defense argues, however, that the statement is not reliable.  The defense asserts that Chavez was in no condition to make the statement.  The defense notes Chavez had received a Fentanyl injection and Versed.  Further, the medical record states the "[p]atient intoxicated and unreliable and does not readily answer questions."  Motion Doc.88, p. 3 (citing Ex. D).  The language of the quote indicates that Chavez was answering questions, just not readily.  Additionally, the medical records indicate Chavez did not lose consciousness prior to the arrival at the hospital (indeed, he was awake enough to complain of left back pain).

That Chavez was intoxicated, unreliable as stated in a medical report, and presumably under the influence of narcotics does not alter the conclusion that Chavez's statement qualifies under the hearsay exceptions.  The statement has adequate indicia of reliability. The circumstances surrounding the statement address how much weight a trier of fact should

1    attribute to the statement rather than its admissibility.

2

3    D.  *Admissibility of Statement*

4           The statement alleged to have been made by Miguel, within the hearing of Chavez,

5    while in the vehicle is a statement by a party-opponent and is not hearsay.  *See* Fed.R.Evid.

6    801(c)(2).  The government will be permitted to question Chavez during cross-examination

7    as to the making of this alleged statement.[1]  Further, the statement by Chavez to the nurse

8    qualifies under the excited utterance and medical diagnosis or treatment exceptions.

9    Fed.R.Evid. 803(2) and (4).  If Bonner testifies at trial, the statement is not precluded as

10   hearsay.  The Court will deny the Motion.

11

12   II.  *Motions in Limine Re:  Other Acts* (Docs. 102, 103)

13          The defense seeks to admit evidence of other acts alleged to have been committed by

14   Agent Joseph Spann ("Spann"):

15          •      Aggravated Assault with a deadly weapon on an unarmed pedestrian in a

16                 parking lot; alleged to have occurred in 2004.

17          •      Domestic Violence against ex-wife resulting in Spann's prohibited possessor

18                 status; alleged to have occurred in 2009-2010.

19          •      Job misconduct as sheriff's deputy in Alabama; alleged to have occurred

20                 in1999 and on other occasions.

21          Generally, Miguel is arguing that Spann has a history of escalating incidents to the use

22   of physical force and that his employer, the U.S. Customs and Border Protection ("CBP"),

23   has consistently "covered" for Spann.  Miguel argues the other acts presumably show that

24   Spann has a motive and intent to make himself out as a victim.

25          Although evidence of other acts is not admissible to prove the character of an

26   individual to show he or she acted in conformity therewith, evidence of other acts may be

27   _____

28          [1]Of course, if it chooses, the defense may raise this issue on direct examination.

"admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]"  Fed.R.Evid. 404(b). "Evidence is admissible under these exceptions if it:  (1) tends to prove a material element of the crime; (2) is similar to a charged offense; (3) is supported by sufficient evidence; and (4) is not too remote in time."  *United States v. Danielson*, 325 F.3d 1054, 1075 (9th Cir. 2003).  Additionally, the probative value must not be "substantially outweighed" by the danger of unfair prejudice."  *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999).

A.  *Remoteness*

There is no bright line rule regarding remoteness.  *United States v. Spillone*, 879 F.2d 514, 518 (9th Cir. 1989).  However, in *United States v. Hinton*, 31 F.3d 817 (9th Cir. 1994), the court found that a two year period was not too remote because the conduct involved a regular pattern of abuse.  The court distinguished that pattern with a more discrete act. Additionally, the appellate court has also found that four years was not too remote.  *See United States v. Houser*, 929 F.2d 1369, 1374 (9th Cir. 1990) (abrogated on other grounds; *see also, United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) ("[D]epending upon the theory of admissibility and the similarity of the acts ... some remote acts may be extremely probative and relevant."  The charged offense was thirteen years after the other act).  Moreover, similarity between the other act and the charged offense may outweigh concerns regarding remoteness.  *Hinton*, 31 F.3d at 837.

The other acts alleged to have occurred are remote.  The most recent incidents are the alleged domestic violence acts which occurred almost five years ago.  Even accepting the defense theory of a pattern would mean finding the pattern last exhibited itself three years longer than that presented in *Hinton*.  Further, the facts of the other acts are not similar to each other or to the facts in this case.  The principle that similarity can outweigh remoteness does not seem to apply here.

B. *Sufficiency of Evidence*

Even if the Court determined that the other acts were not too remote, there is not sufficient evidence of the other acts. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor"). Indeed, the parking lot incident, the alleged other act most similar to this case, is not supported by evidence that substantiates the defense theory that Spann "made himself out to be the victim." Rather, the other person involved in the incident acknowledged to the police that he was the one that escalated the incident to physical contact.

There simply is insufficient evidence to support Miguel's assertion that the domestic violence and parking lot acts occurred as he states. There are conflicting domestic violence reports and witness reports regarding the parking lot incident. Further, although sufficient evidence of Spann's alleged misconduct as a sheriff's deputy exists, the defense does not offer any evidence, as opposed to a theory, that Spann alleged reverse discrimination to make it appear he was a victim (as opposed to making a valid claim of reverse discrimination). Additionally, Spann has not been criminally charged or held civilly liable for the any of the alleged conduct. Admitting the evidence would result in the admission of the competing facts . . . with a likely result (based on the decisions of law enforcement and prosecuting agencies) of the facts not being established either way. The Court finds the alleged other acts are not supported by sufficient evidence.

C. *Material Element of the Crime*

As to the requirement that the other act tends to prove a material element of the crime (or, in this case, the defense theory), the Court finds the evidence does not tend to prove the defense theory. In this case, the theory of the defense is that Miguel did not have the motor skills to control the vehicle, which would have allowed him to avoid hitting the CBP vehicle.

Evidence of the Spann's victimhood, impusivity, or state of mind[2] are not the defense in this case, simply bases to attack Spann's credibility. Because there is insufficient evidence of the other acts, the evidence would only show conflicting reports of the incidents, from which only speculative inferences could be made by the defense. This does not constitute tending to prove a material element of the defense theory regarding motor skills and does not provide more than a speculative theory as to Spann's motive, intent, state of mind, or impulsivity.

Further, Miguel argues the victim theory along with asserting CBP has a history of covering for Spann (and other agents). For example, Miguel has submitted evidence that it is always assumed an agent was assaulted when an agent discharges his weapon. Miguel also asserts CBP must have sanitized (i.e., concealed) the full facts of the prior incidents because otherwise the Court would have determined disclosure was appropriate following a review pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). Additionally, the defense asserts CBP helped Spann (e.g., drafted language that allowed Spann to continue carrying a firearm while on the job).

Simply put, the Court does not agree the evidence shows CBP "covered" for Spann. Rather, the government has indicated that review of Spann's actions in this case by CBP has not been completed due to this pending criminal case. Further, as is routine in any officer shooting, the Federal Bureau of Investigation is the investigating agency. The documents provided to the Court for *Henthorn* review appear to have included the facts as known by CBP. Lastly, the assistance in drafting language allowing Spann to continue carrying a firearm while on the job was done by the agent's union. In light of this conclusion, the proposed alleged evidence does not tend to prove a material element of Miguel's defense.

D. *Danger of Unfair Prejudice*

Any probative value of the proposed other act evidence is minimal because the

---

[2]The Court declines to address whether the evidence tends to establish an absence of mistake as there is no basis to think evidence Spann believed he was under attack by a drug cartel will be presented at trial.

evidence is conflicting and only provides inferences of a speculative theory of why Spann

may not be credible as to the events charged in this case.  This danger of unfair prejudice

substantially outweighs the limited probative value of the evidence.

E.  *Fed.R.Evid. 403*

Even if the Court found the evidence to be admissible under Fed.R.Evid. 404(b), such

evidence is subject to exclusion:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed.R.Evid. 403.  Presentation of the proposed other act evidence would result in a mini-trial

as to whether the other acts even occurred.  This would confuse the issues, cause undue delay

and waste time.  It may also mislead the jury.  Because any relevance of the evidence is

limited and the resulting defense theory that can be inferred from the evidence is speculative,

the Court finds the probative value of the evidence is substantially outweighed by the danger

of confusion of the issues, misleading the jury, undue delay, and wasting time.  Further, the

charge in this case is Assault on a Federal Officer with a Deadly Weapon in violation of 18

U.S.C. §§ 111(a)(1), 111(b), and 1114.  The shooting occurred immediately after the alleged

assault – this Court has ruled the evidence of the shooting is admissible at trial to attack

Spann's credibility as stated in the Court's November 21, 2014 Order.  *See* Doc. 65.

III.  *Character Evidence Pursuant to Fed.R.Evid. 404(a)*

Miguel has filed a Notice of Disclosure of Witness Pursuant to Fed.R.Evid. 404(a) and

(b) (Doc. 108).  The defense asserts that retired Major Tommy Carter, of the Lee County,

Alabama, Sheriff's Department would testify that his office had to repeatedly answer to the

local judiciary for Spann's failures to follow law and procedure, that Spann had a reputation

for being "impulsive" and "difficult to control," and that Spann had a reputation for making

excuses and blaming others for his own bad acts.  Although a motion requesting a

1  determination of the admissibility of the Fed.R.Evid. 404(a) evidence has not been filed, the

2  Court will address the admissibility of evidence pursuant to this section as the issues are so

3  interrelated to the issues discussed herein.

4       Generally, "[e]vidence of a person's character or character trait is not admissible to

5  prove that on a particular occasion the person acted in accordance with the character or trait."

6  Fed.R.Evid. 404(a)(1). However, the rule makes an exception and provides that in a criminal

7  case, a "defendant may offer evidence of an alleged victim's pertinent trait[.]." Fed.R.Evid.

8  404(a)(2)(B). "When evidence of a person's character or character trait is admissible, it may

9  be proved by testimony about the person's reputation or by testimony in the form of an

10  opinion." Fed.R.Evid. 405(a).[3]

11       The defense seeks to establish that Spann's testimony as to the events regarding the

12  charged offense will not be credible because Spann makes himself out to be a victim.

13  Miguel's defense is that, because he was intoxicated, Miguel did not have the motor skills

14  to control his vehicle.  In determining whether character or a character trait is an essential

15  element of the charge or defense for purposes of Rule 405, the Court must conduct an inquiry

16  according to the terms of the Rule itself. *Keiser*, 57 F.3d at 856.  "The relevant question

17  should be: would proof, or failure of proof, of the character trait by itself actually satisfy an

18  element of the charge, claim, or defense? If not, then character is not essential and evidence

19  should be limited to opinion or reputation."  57 F.3d at 856 (citations omitted).  Here,

20  whether Spann made himself out to be a victim addresses whether he is credible, not an

21  essential element of Miguel's defense.  The evidence, accordingly, should be limited to

22  opinion or reputation.

23

24      [3]"The note to Rule 404 begins with the assertion that '[t]his subdivision [section 404(a)] deals with the basic question whether character evidence should be admitted.'  The note to Rule

25  405, on the other hand, begins by clarifying that Rule 405 'deals only with allowable methods of proving character, not with the admissibility of character evidence, which is covered in Rule

26  404.' These notes deal with separate questions, as do the evidence rules they explain." *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995).

27

28

However, cases discussing character evidence under Fed.R.Evid. 405 generally find only that reputation around the time of the charged offense and in that community are relevant.  *See e.g., United States v. Curtis*, 644 F.2d 263 (3rd Cir. 1981); *Iva Ikuko Toguri D'Aquino v. United States*, 192 F.2d 338 (9th Cir. 1951); *see also* 98 C.J.S. Witnesses § 668 ("The inquiry as to the character or reputation of a witness affecting credibility should be limited in time, and the inquiry should relate primarily to the time when he or she testifies.") (footnotes omitted).  Evidence as to Spann's reputation, as would be testified to by Carter, refers to a reputation approximately 15 years prior to the charged the offense and in a community over a thousand miles away. This is simply too remote in time to be relevant in the case at bar.

IV.  *Impeachment*

The defense asserts inquiry into Spann's other acts during cross-examination is appropriate:

> "The right to cross-examine includes the opportunity to show [not only] that a witness is biased, [but also] that the testimony is exaggerated or [otherwise] unbelievable." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality); *see also Delaware v. Fensterer*, 474 U.S. 15, 22, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities[such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.")

*Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1035-36 (9th Cir. 2005).  at 1035-36.  The Ninth Circuit has also stated:

> The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496 (79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377) (1959).

*Burr v. Sullivan*, 618 F.2d 583 (9th Cir. 1980).

However, impeachment based on a theory is not appropriate where there is an insufficient foundation the evidence supports the theory.  *See e.g., Bui v. DiPaolo*, 170 F.3d

- 10 -

232, 245 (1st Cir. 1999) (*cert. denied*, 529 U.S. 1086 (2000); *United States v. Lin*, 101 F.3d 760, 767–68 (D.C.Cir.1997). As previously stated, the facts regarding the other acts are disputed and it is only speculation that supports the defense theory that Spann was making himself out to be a victim. *See e.g. United States v. Noti*, 731 F.2d 610 (9th Cir. 1984) (evidence excluded where insufficient proof of motive ("no offer of proof that [witness] cooperated in investigation ot gain lenient treatment . . . or that investigation of [witness] was deferred to induce his cooperation")). Rather, the facts may have been entirely as stated by Spann. Allowing impeachment with the use of these facts, where only speculation supports the defense theory, would only be minimally relevant. The Court finds the minimal probative value of the evidence is substantially outweighed by the danger of prejudice, confusion of the issues, misleading the jury, undue delay, and wasting time. The defense theory that Spann has not accurately reported the events of the incident is best established by impeachment of Spann as to his motivations in his reporting of the facts of this incident, including a pending investigation. Impeachment of Spann by the possible historical motive to appear to have been wronged is cummulative of the impeachment regarding the instant incident and speculative. *United States v. Jackson*, 882 F.2d 1444, 1446 (9th Cir. 1989) (district court's refusal to allow cross-examination as to certain prior conduct was not reversible error where the jury had sufficient information to appraise the bias and motives of the witness). Therefore, defense counsel may not impeach Spann regarding the prior incidents.

V. *Disclosure of Spann's Personnel Record*

During the February 11, 2015 hearing, the defense requested a ruling on its motion for Spann's personnel record, including his employment application. The Court has not been able to ascertain which document the defense is referring to.[4] Nonetheless, the Court will

---

[4]For example, Doc. 86 was a discovery request filed at about the time-frame referenced by the defense, but it does not seek Spann's personnel record.

address Miguel's request.

Miguel seeks disclosure of Spann's personnel record, including Spann's employment application, to determine whether Spann truthfully answered the questions on the application. The Ninth Circuit has established a procedure for when a defendant seeks a personnel file of a testifying officer. *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). Miguel's request of Spann's personnel record circumvents that established procedure.

Further, the Court notifies Miguel that it has reviewed, pursuant to *Henthorn*, a summary of Spann's application and responses. Based on the circumstances of Spann's separation from the Lee County Sheriff's Department, as stated by counsel at the February 11, 2015, hearing, and a review of Spann's application and responses, there is no basis to conclude that the disclosure of the application and responses would provide Miguel with impeachment material.

The Court will deny the request for the personnel file.

Accordingly, IT IS ORDERED:

1. Miguel's Motion in Limine (Doc. 88) regarding hearsay statements is DENIED.

2. The government's Motion in Limine (Doc. 102) regarding other acts is GRANTED.

3. Miguel's Motion in Limine (Doc. 103) regarding other acts is DENIED.

4. Miguel's request to present Rule 404(a) evidence through the testimony of Carter is DENIED.

5. Miguel's request for disclosure of Spann's personnel record is DENIED.

6. Although this Order addresses some sealed documents, the Clerk of Court shall NOT file this document under seal.

DATED this 13th day of February, 2015.

Cindy K. Jorgenson
United States District Judge